USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _12/17/2024_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VALBONA PEPAJ,

          Plaintiff,

    -against-

INNOVATIVE FACILITY SERVICE and
ALEX CABRAL,

          Defendants.

23-CV-07159 (JPC) (BCM)

**ORDER COMPELLING ARBITRATION;
REPORT AND RECOMMENDATION
TO THE HON. JOHN P. CRONAN
REGARDING MOTION TO DISMISS**

**BARBARA MOSES, United States Magistrate Judge.**

On September 5, 2019, defendant Innovative Facility Services, LLC (IFS) terminated plaintiff Valbona Pepaj's employment. Plaintiff grieved the dismissal through her union, Service Employees International Union Local 32BJ (32BJ or the Union), but when the Union declined to pursue the grievance to arbitration, plaintiff failed to arbitrate the claim on her own behalf, as permitted – and required – by her collective bargaining agreement (CBA). Instead, on November 18, 2021 (more than two years after her termination), plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC), which issued a Notice of Right to Sue on December 1, 2021, and then sent her another copy on June 29, 2023, after she informed the agency that she never received the initial mailing. On August 14, 2023, plaintiff filed this action, pro se, seeking damages and related relief under federal, state, and local law from IFS and her former supervisor, Alex Cabral, for employment discrimination on the basis of sex, including unlawful termination, disparate treatment, retaliation, and harassment.

Now before the Court is defendants' motion (Dkt. 52) to dismiss plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1) or, in the alternative, to compel her to arbitrate her claims pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16. The motion is within the scope of my reference (*see* Dkt. 6), and – insofar as it seeks an order compelling arbitration – is also within my authority to "hear and determine" pursuant to 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ.

P. 72(a).[1] For the reasons that follow, the motion to compel will be GRANTED and this action

will be STAYED pending arbitration. In the alternative – because plaintiff's sole federal claim is

clearly time-barred – I recommend that this action be DISMISSED pursuant to Rule 12(b)(6).

## I.    FACTUAL BACKGROUND

Plaintiff was employed by IFS as a cleaner in a commercial building from October 2017

until September 5, 2019, when she was discharged. Compl. (Dkt. 1) at ECF pp. 10, 15; *see also id.*

at ECF p. 26 (September 5, 2019 notice advising plaintiff that her employment "will end on 9/5/19"

and that the reason for her discharge was "Job Abandonment"). Cabral was plaintiff's immediate

supervisor. *Id.* at ECF p. 10. Throughout her employment, plaintiff was a member of 32BJ, *id.* at

ECF p. 11, subject to the CBA between 32BJ and the Realty Advisory Board on Labor Relations,

Inc. (RAB), which is "a multiemployer association to which IFS is a constituent." Cabral Decl.

(Dkt. 55) ¶ 5; *see also id.* Ex. A (Dkt. 55-1) (copy of CBA as in effect from January 1, 2016 to

December 31, 2019).

### A.    The CBA

Articles V and VI of the CBA outline the procedures for grieving and arbitrating workplace

disputes arising under the CBA. These procedures are "the sole and exclusive method for the

determination of all such issues." CBA Art. VI § 4. Article XVI of the CBA expressly prohibits

employment discrimination. It also expressly requires Union members to submit claims of

employment discrimination to mediation and arbitration:

> There shall be no discrimination against any present or future employee by reason
> of race, creed, color, age, disability, national origin, sex, sexual orientation, union
> membership or any characteristic protected by law, including, but not limited to,
> claims made pursuant to Title VII of the Civil Rights Act, . . . the New York State
> Human Rights Law, the New York City Human Rights Code, . . . or any other

---

[1] *See*, *e.g.*, *Legal Recovery Assocs. LLC v. Brenes L. Grp., P.C.*, 2023 WL 1382134, at *1 n.2
(S.D.N.Y. Jan. 31, 2023) (collecting cases).

similar laws, rules or regulations. All such claims shall be subject to the grievance and arbitration procedure (Article V and VI) as the sole and exclusive remedy for violations. Arbitrators shall apply appropriate law in rendering decisions based upon claims of discrimination.

CBA Art. XVI § 30(A).

Not only does the CBA require arbitration of discrimination claims; it includes a detailed No Discrimination Protocol under which either the Union or "an individual employee," CBA Art. XVI § 30(B)(2)(a), may initiate a Covered Claim, that is, a claim of "workplace discrimination, harassment and retaliation," *id.* § 30(B)(1), by submitting a written Notice of Claim to the Office of the Contract Arbitrator (OCA) "within the applicable statutory statute of limitations[.]" *Id.* § 30(B)(2)(a). The Covered Claim will initially be mediated. *Id.* § 30(B)(2)(b)-(i). If the mediation is unsuccessful, and if "the Union has declined to arbitrate an employee's individual discrimination claim," then the employee – if still dissatisfied – must present her claim to an arbitrator designated for this purpose. *Id.* § 30(B)(3)(a).[2] If an employee wishes to "bypass the Protocol process" and take her discrimination claim to court, she must first "notify in writing the RAB and the Employer that the Employee is attempting to bypass the Protocol process." *Id.* § 30(B)(4)(a). "Providing the Bypass Notice is a condition precedent prior to bringing a Covered Claim in any forum." *Id.* § 30(B)(4)(d).

---

[2] Ordinary workplace disputes – for example, whether an employer had "justifiable cause" to discharge an employee, in accordance with CBA Art. III – are resolved by one of the Contract Arbitrators designated in the CBA. *See* CBA Art. VI §§ 1, 4, 10. However, if the claim falls under the No Discrimination Protocol, and if the Union has declined to arbitrate on the employee's behalf, the dispute is resolved by an arbitrator selected by the parties from a list of American Arbitration Association (AAA) arbitrators who "(1) are attorneys, and (2) are designated by the AAA to decide employment discrimination cases." CBA Art. XVI § 30(B)(3)(b). The arbitration is then conducted "pursuant to the AAA National Rules for Employment Disputes," *id.* § 30(B)(3)(b), and the hearings are held "at the OCA offices without charge to the parties." *Id.* § 30(B)(3)(c). "Neither the Union nor the RAB will be a party to the arbitration described in this section[.]" *Id.* § 30(B)(3)(d).

Plaintiff filed numerous grievances during her IFS employment, some of which were successful. *See* Compl. at ECF pp. 11-14. The only arguably gender-related grievance described in the Complaint was filed in August 2018, when plaintiff complained that she was not given an "open porter position on the afternoon shift," despite having more seniority than the man who received the position. *Id.* at ECF p. 11. However, plaintiff withdrew that grievance when "a different afternoon position opened up a month later, and I was given that position." *Id.* at ECF p. 12. At least one of plaintiff's grievances, regarding a half-hour break previously granted to morning shift employees, "went to arbitration," *id.* at ECF p. 11, although plaintiff does not know the outcome because "nothing happened for two years and by that time, I had been terminated." *Id.*

### B.    Cabral

According to plaintiff, Cabral began treating her unfairly after she turned down his request to "go with him." *See* 5/23/24 Tr. (Dkt. 56) at 26:19-25, 27:17-28:4, 30:3-9.[3] For example, after she rebuffed his advances ("in a nice way"), *id.* at 26:21, Cabral assigned her shift to "another girl from his country, Dominican." *Id.* at 26:22-24. Additionally, he started coming into the ladies' locker room at lunchtime, where plaintiff and her female co-workers were eating lunch, *id.* at 28:5-17, and unfairly refused her requests for vacation time, "just to screw with me." *Id.* at 29:18-22.[4]

Beginning in late 2018, plaintiff filed several grievances regarding "unjust discipline," Compl. at ECF p. 12, including two warnings that she received in October 2018, and another in July 2019. *Id.* at ECF pp. 12-13. The July warning (which stemmed from what she describes as a

---

[3] These allegations, which are set forth here for the sake of completeness, do not appear in the Complaint. They were first made during a May 23, 2024 conference before the Court.

[4] On August 20, 2024, in her written (but unsworn) response to defendants' pending motion, plaintiff expanded her harassment allegations further, stating that Cabral asked her out or "made sexual advances" on "multiple occasions," and frequently stood "inside or just outside of the women's locker room spying on Plaintiff." Pl. Resp. (Dkt. 64) at 2.

misunderstanding regarding her lunch hour) was issued by Cabral, who also "refused to give me vacation days I requested and instead gave those days to a less senior employee." *Id*. at ECF p. 13.

In August 2019, plaintiff requested a leave of absence due to a family emergency that required her to return to her native Albania for three weeks. Compl. at ECF pp. 14, 37 (written request, dated August 7, 2019, for leave of absence from August 17 to September 7, 2019). On August 17 – the day her flight was due to leave – plaintiff still "did not have an answer," so she called IFS Vice President Michael Saljanin, who "said he would speak to Project Manager Cabral and that it was okay for [her] to go." *Id*. at ECF p. 14. However, later that same day, while plaintiff was at the airport, Cabral told her that she needed to work that Sunday, and that "he would give [her] permission to go on leave ten days later." *Id*. Plaintiff explained to Cabral that she had received permission from Saljanin and already had her ticket. *Id*. However, when plaintiff returned to the United States, she found that she had been fired for job abandonment. *Id*. at ECF p. 15.

### C.    Grievance and NLRB Charge

Plaintiff immediately grieved her termination, s*ee* Compl. at ECF p. 15; *id*. at ECF p. 31 (Grievance Initiation Letter dated September 6, 2019), but the Union informed her that it "would not pursue the grievance to arbitration." *Id*. at ECF p. 15. Plaintiff appealed that decision to the 32BJ Grievance Appeal Board (GAB), but on March 6, 2020, she was informed "that the GAB had denied my appeal and that my grievance would not be taken to arbitration." *Id*. There is no suggestion in the record that plaintiff ever pursued arbitration – or indeed any of her related rights – under the No Discrimination Protocol.[5] Nor did she provide a Bypass Notice to IFS.[6] According

---

[5] Although plaintiff grieved her *termination*, it does not appear that she made any claim of *discrimination*. The relevant Grievance Initiation Letter states only, "Member claims that she was unjustly suspended indefinitely effective 8/14/2019 pending investigation." Compl. at ECF p. 31.

[6] As the court noted in *Hammel v. NYC Sch. Support Servs., Inc.*, 2021 WL 9037958, at *4 (E.D.N.Y. Dec. 27, 2021), the Bypass Notice provision, contained in CMA Art. XVI § 30(B)(4),

to Cabral, plaintiff did not take "any steps" to follow the procedures set forth in the Protocol. Cabral Decl. ¶ 7.

Plaintiff did, however, file a complaint with the National Labor Relations Board (NLRB), charging that 32BJ violated its duty of fair representation by failing to take her termination grievance to arbitration.[7] By letter dated May 26, 2020, the NLRB dismissed the charge, because there was no evidence that the Union's decision "was unreasonable or influenced by any unlawful considerations." Lopez Decl. (Dkt. 54) Ex. B, at 1.

### D.    EEOC Charge and Notice of Right to Sue

On November 18, 2021 – more than two years after her termination from IFS and more than 18 months after the NLRB dismissed her fair representation charge – plaintiff filed her first EEOC charge, alleging that she was discriminated against on the basis of race, sex, and national origin. Compl. at ECF p. 23. She wrote, "For almost two (2) years, the supervisor Alex Cabral harassed and discriminated against me until I was [f]ired, only to bring his family in my place, [b]rother, sister and other relatives." *Id.* She filed a second EEOC charge five days later, on November 23, 2021, this time adding a request for a "Right to Sue." *Id.* at ECF p. 50.

The EEOC issued a Notice of Right to Sue on December 1, 2021. Lopez Decl. Ex. C (12/1/21 EEOC Notice). The notice was addressed to plaintiff at the same address she has provided to this Court, and advised her that any "lawsuit under Title VII" must be filed "**WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost." 12/1/21 EEOC

---

does not "give[] employees a means of unilaterally bypassing arbitration after giving notice." Rather, that provision "permits an employee to 'attempt' to vindicate his federal rights in another forum. Such an attempt will be successful only if the employer declines to invoke the CBA's arbitration provision." *Id.*

[7] Plaintiff's written NLRB charge is not in the record. However, the NLRB's website reflects that it was filed on April 7, 2020. *See* https://www.nlrb.gov/case/02-CB-258833 [https://perma.cc/8CFV-S5TR].

Notice at 1. Plaintiff now states that she "never received her original EEOC Right to Sue Letter." Resp. at 1. However, she apparently received the EEOC's December 1, 2021 cover letter, which stated that the Right to Sue Notice she had requested was enclosed, and advised plaintiff, again: "If you wish to file suit in this matter, you must do so within 90 days of your receipt of this notice." Compl. at ECF p. 8.

Eighteen months later, the EEOC sent plaintiff another copy of the 12/1/21 EEOC Notice under cover of a new letter, dated June 29, 2023, stating, "The EEOC is providing you a copy of the notice of rights to sue that was issued previously on December 1, 2021. The EEOC has been informed that you have not received the notice of rights to sue. Please be advised that the start date to pursue your claim in court begins upon the date of receipt, which is June 29, 2023." Compl. at ECF p. 9 (6/29/23 EEOC Ltr.) *Id*. Plaintiff alleges that she received the 6/29/23 EEOC letter and the enclosed Notice of Right to Sue on July 20, 2023. Compl. at ECF p. 6; Pl. Resp. at 1.

## II.    PROCEDURAL HISTORY

### A.    Complaint

Plaintiff initiated this action on August 14, 2023, pro se, by filing a form Employment Discrimination Complaint with 45 pages of exhibits. On the form, plaintiff checked boxes to indicate that she is suing for sex discrimination pursuant to Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e to 2000e-17, the New York State Human Rights Law (NYSHRL), N.Y. Exec. Law §§ 290-297, and the New York City Human Rights Law (NYCHRL), N.Y.C. Admin. Code §§ 8-101 to 8-103. *See* Compl. at ECF pp. 3-4. Under "Statement of Claim," she checked boxes to allege that defendants "terminated my employment," "provided me with terms and conditions of employment different from those of similar employees," "retaliated against me," and "harassed me or created a hostile work environment." *Id*. at ECF p. 5. Plaintiff alleged

that she filed her EEOC charge on November 23, 2021, and received a Notice of Right to Sue on July 20, 2023. Compl. at ECF p. 6.

### B. Default Proceedings

On February 14, 2024, after making numerous attempts to effect service of process (*see*, *e.g.*, Dkts. 4, 5, 9, 14, 15, 18, 19), plaintiff filed proposed certificates of default as to both defendants, which the Clerk issued the same day. (Dkts. 27-28.) On March 8, 2024, she filed a motion for a default judgment as to both defendants, supported by a new declaration outlining her service efforts. (Dkt. 33.)

On March 18 and 22, 2024, defendants' counsel entered their appearances (Dkts. 34, 36, 38, 39), and on April 8, 2024, defendants filed a letter-brief opposing plaintiff's motion for default judgment, cross-moving for an order vacating the Certificates of Default, and requesting leave to move to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(5), and 12(b)(6), or in the alternative, to compel mandatory arbitration pursuant to the CBA. (Dkt. 42.) On April 24, 2024, plaintiff opposed the motion, arguing that service was proper and that she was entitled to a default judgment. (Dkt. 46.) On May 13, 2024, I granted defendants' cross-motion to vacate the Certificates of Default and denied plaintiff's motion for default judgment. (Dkt. 48.)

### C. Defendants' Motion

On May 23, 2024, the parties appeared for a scheduling conference, at which defendants waived their potential Rule 12(b)(5) motion (for insufficient service of process), and the Court set a schedule for their remaining motions. *See* 5/23/24 Tr. at 19:4-8, 42:7-44:19. Additionally, during the May 23 conference, plaintiff informally provided more detail concerning Cabral's alleged conduct and her various efforts to seek redress. Regarding the December 1, 2021 Right to Sue Notice, plaintiff told the Court that she did not know it had been issued until she went to the EEOC to "ask for the case and what's going on," because "[i]t seemed so long." *Id.* at 32:15-16. Upon

learning that the notice had been issued in 2020 – and the 90-day window to sue had long passed – she requested that it be reissued. *Id*. at 33:8-10.

On June 17, 2024, defendants filed their motion to dismiss or, in the alternative, to compel arbitration and stay the case, accompanied by a memorandum of law (Def. Mem.) (Dkt. 53), the Lopez Declaration, and the Cabral Declaration. Defendants argue that plaintiff's claims are all time-barred because she failed to file her EEOC charge within 300 days after her termination, as required by 42 U.S.C. § 2000e-5(e)(1),[8] failed to file this action within 90 days after receiving the EEOC's Notice of Right to Sue, as required by 42 U.S.C. § 2000e–5(f)(1),[9] and failed to file her NYSHRL and NYCHRL claims within three years after her termination, as required by N.Y.C.P.L.R. § 214(2) and N.Y.C. Admin. Code § 8-502(d), respectively.[10] *See* Def. Mem. at 5-11. Defendants further argue that plaintiff has failed to plausibly allege any unlawful discrimination, and should not be granted leave to amend for that purpose. *See id*. at 11-22. Lastly, defendants contend that plaintiff was required to arbitrate all of her claims in accordance with the No Discrimination Protocol in the CBA. *Id*. at 22-25.

On August 20, 2024, plaintiff filed her response, in which she argues that the 300-day period within which she was required to file her EEOC charge should be equitably tolled, because during that period she was "engaged in a protracted back and forth with her union," as well as with the NLRB, and because the COVID-19 pandemic "was disrupting everyday life" as well as "the

---

[8] Assuming that plaintiff's employment was terminated on September 5, 2019 (the date on her termination notice), the 300-day period ran on July 1, 2020, unless tolled.

[9] "Normally it is assumed that a mailed document is received three days after its mailing." *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 525 (2d Cir. 1996). If plaintiff received the 12/1/21 EEOC Notice on December 4, 2021, the 90-day period ran on March 4, 2022, unless tolled.

[10] Assuming that plaintiff's employment was terminated on September 5, 2019, the three-year limitations period ran on September 4, 2022, unless tolled.

functioning of government agencies and the courts[.]" Pl. Resp. at 2. As to the 90-day period within which a plaintiff must file a Title VII complaint after receiving a right-to-sue notice, plaintiff contends that since she "never received her original EEOC Right to Sue Letter" in 2021, this action was timely filed within 90 days of her receipt of "another Right to Sue Letter dated June 29, 2023." *Id*. at 1. According to plaintiff, her NYSHRL and NYCHRL claims are not barred by the applicable three-year statute of limitations because the limitations period was "tolled by [E]xecutive [O]rder 202.8," issued during the COVID pandemic, which "adds 249 days to Plaintiff's statute of limitations." *Id*. at 3. Plaintiff then argues that she has adequately stated claims for disparate treatment and hostile work environment. *Id*. at 3-4. Finally, plaintiff argues that she "did pursue arbitration with the union, but the union refused to represent her[.]" *Id*. at 2. She contends that she should be permitted to bring her claims in this Court because the Union "has domain" over her ability to arbitrate and prevented her from doing so. *Id*. at 5.

On September 23, 2024, defendants filed their reply memorandum, arguing that plaintiff has not alleged any "extraordinary circumstances," as required to equitably toll the 300-day period for filing an EEOC charge. Def. Reply (Dkt. 67) at 1-4. Nor, in defendants' view, has she made a credible showing that she did not receive the 12/1/21 EEOC Notice until 2023. *Id*. at 5. As for plaintiff's state and local claims, defendants point out that Executive Order 202.8 suspended state statutes of limitation for 228 days (not 249), from March 20 until November 3, 2020, and calculate that even with the benefit of that suspension, plaintiff failed to file her NYSHRL and NYCHRL claims within the applicable limitation period. *Id*. at 6-7. Defendants then reiterate their argument as to the insufficiency of plaintiff's factual allegations, *id*. at 7-9, and conclude by pointing out that (unlike the union contracts at issue in the caselaw cited by plaintiff) the CBA's No Discrimination Protocol both permits and requires an individual employee to arbitrate her discrimination claims

with or without the Union, such that plaintiff's failure to do so "does not preclude the Court from compelling arbitration consistent with the terms of the CBA." *Id*. at 9-10.

## III. DISCUSSION

### A. Order of Analysis

Defendants ask the Court to dismiss this action pursuant to Rule 12(b)(6), for failure to state a claim, or pursuant to Rule 12(b)(1), "for lack of subject matter jurisdiction in light of the collective bargaining agreement." Pl. Mem. at 1. Alternatively, "should plaintiff's complaint survive dismissal," they ask that she be compelled to arbitrate in accordance with the CBA and that her lawsuit "be stayed." *Id*. at 22.

I begin with the motion to compel arbitration, because "a district court should generally rule on a motion to compel arbitration before proceeding to a merits-based motion to dismiss." *Harris v. TD Ameritrade Inc.*, 338 F. Supp. 3d 170, 181 (S.D.N.Y. 2018), *aff'd*, 837 F. App'x 841 (2d Cir. 2021) (summary order). This is true even where, as here, defendants have a strong argument that plaintiff's claims are time-barred. *See*, *e.g*., *Garnes v. Pritchard Indus., Inc.*, 2023 WL 3980693, at *5 (S.D.N.Y. May 23, 2023) ("Before assessing Pritchard's challenges to the timeliness and legal sufficiency of Mr. Garnes' claims, the Court addresses the threshold issue of whether his claims are subject to mandatory arbitration under the CBAs."), *adopted,* 2023 WL 3977882 (S.D.N.Y. June 13, 2023). Moreover, although a motion to compel arbitration "goes to the Court's power to hear a case," *Harris*, 338 F. Supp. 3d at 181, "[s]ection 4 of the FAA, and not Rule 12(b), is the procedurally proper framework under which to evaluate [such a] motion." *Alfonso v. Maggies Paratransit Corp.*, 203 F. Supp. 3d 244, 246 n.2 (E.D.N.Y. 2016).

### B.    Motion to Compel Arbitration

#### 1.    Legal Standards

The FAA provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In analyzing a motion to compel arbitration of claims brought under a federal statute, (such as Title VII), the court must determine: (1) whether the parties entered into a valid agreement to arbitrate; (2) whether the claims are subject to arbitration; and (3) whether Congress intended those claims to be nonarbitrable. *Abdullayeva v. Attending Home Care Servs. LLC*, 928 F.3d 218, 221-22 (2d Cir. 2019); *accord Garnes*, 2023 WL 3980693, at *5. If these requirements are met, the court must "[direct] the parties to proceed to arbitration in accordance with the terms of the agreement," 9 U.S.C. § 4, and must also, "on application of one of the parties[,] stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]" 9 U.S.C. § 3.

When determining a motion to compel arbitration, the court properly "considers all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, and draws all reasonable inferences in favor of the non-moving party." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (internal quotation marks, citations, and alterations omitted); *see also Sanchez v. Clipper Realty, Inc.*, 638 F. Supp. 3d 357, 366 (S.D.N.Y. 2022) ("Courts routinely consider documents outside the pleadings when evaluating motions to compel arbitration[.]").

If the district court concludes that all of the parties' claims are subject to mandatory arbitration, and if any party has requested a stay pursuant to 9 U.S.C. § 3, the court must stay the action pending arbitration. *Smith v. Spizzirri*, 601 U.S. 472, 475-76 (2024) ("When a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding

pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration."); *see also Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015) ("[T]he text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested."); *Abel v. All Green Bldg. Servs. of New York LLC*, 2017 WL 5468764, at *2 (S.D.N.Y. Nov. 14, 2017) (staying rather than dismissing case after concluding that employee was required to arbitrate Title VII and NYCHRL claims under same CBA at issue here).[11]

## 2. Plaintiff Must Arbitrate Her Discrimination Claims

It is well-settled that "a collective-bargaining agreement that clearly and unmistakably requires union members to arbitrate [statutory discrimination] claims is enforceable as a matter of federal law." *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 274 (2009). In *Pyett* – which involved an earlier version of the same 32BJ/RAB CBA at issue here – the question was whether a Union member could be compelled to arbitrate an age discrimination claim brought under the Age Discrimination in Employment Act. Since then, however, "[c]ourts throughout this Circuit" have "applied *Pyett's* reasoning to claims arising under Title VII, the ADA, the NYSHRL and the NYCHRL, concluding that those statutes are equally susceptible to mandatory arbitration

---

[11] After *Katz* was decided – but prior to *Spizzirri* – the Second Circuit explained that although a stay is mandatory if a stay request was made, the FAA "permits courts to dismiss rather than stay litigation pending arbitration if the party does not request a stay and if all claims in the action will be resolved by arbitration." *Dylan 140 LLC v. Figueroa as Tr. of Bldg. Serv. 32BJ Health Fund*, 982 F.3d 851, 858 n.2 (2d Cir. 2020) (citing *Benzemann v. Citibank N.A.*, 622 F. App'x 16, 18 (2d Cir. 2015) (summary order)). It is not clear whether the "don't ask, don't stay" exception has survived *Spizzirri*. *See, e.g.*, *Roddey v. Menon*, 2024 WL 4123299, at *5 (S.D.N.Y. Sept. 9, 2024) (citing *Spizzirri* and staying, rather than dismissing, all of plaintiffs' claims after finding them arbitrable). Here, however, defendants expressly argued (albeit in the alternative) that "this matter must be stayed because Plaintiff's claims are subject to the [No Discrimination] Protocols" in the CBA. Def. Mem. at 25. Consequently, upon finding that all of plaintiff's claims are subject to mandatory arbitration, the Court must stay this case.

agreements." *Germosen v. ABM Indus. Corp.*, 2014 WL 4211347, at *6 (S.D.N.Y. Aug. 26, 2014). As a result, courts in this District (and elsewhere) routinely compel 32BJ members to arbitrate their employment discrimination claims in accordance with the No Discrimination Protocol in the CBA. *See*, *e.g.*, *Lagerstrom v. Orsid Realty*, 2024 WL 532291 (S.D.N.Y. Feb. 9, 2024) (religious discrimination related to plaintiff's refusal to be vaccinated against COVID-19); *Garnes*, 2023 WL 3980693 (race, color, ethnicity, national origin, and gender discrimination, as well as retaliation); *Abel*, 2017 WL 5468764 (religious discrimination); *Hamzaraj v. ABM Janitorial Ne. Inc.*, 2016 WL 3571387 (S.D.N.Y. June 27, 2016) (age and sex discrimination, retaliation); *Germosen*, 2014 WL 4211347 (race, color, age, national origin and disability discrimination); *Jenkins v. Collins Bldg. Servs., Inc.*, 2013 WL 8112381 (S.D.N.Y. Oct. 17, 2013) (race and national origin discrimination); *Bouras v. Good Hope Mgmt. Corp.*, 2012 WL 3055864 (S.D.N.Y. July 24, 2012) (race and religious discrimination); *Borrero v. Ruppert Hous. Co.*, 2009 WL 1748060 (S.D.N.Y. June 19, 2009) (national origin and disability discrimination).

Plaintiff Pepaj concedes that she was subject to the CBA, *see* Compl. at ECF p. 11, and does not dispute that her employment discrimination claims are expressly made arbitrable by the No Discrimination Protocol. Instead, she argues that she should be permitted to proceed in this Court because she "attempted to arbitrate her claims with defendants" but the Union "chose not to pursue it." Pl. Resp. at 5. According to plaintiff, "[w]hen a Union controls access to an arbitral forum and chooses not to pursue that individual's claim, Southern District courts have generally declined to compel arbitration." *Id*. (citing *Morris v. Temco Serv. Indus*., Inc., 2010 WL 3291810, at *5 (S.D.N.Y. Aug. 12, 2010), and *Kravar v. Triangle Servs., Inc.,* 2009 WL 1392595, at *3 (S.D.N.Y. May 19, 2009)).

It is true that arbitration cannot be compelled under a CBA that "not only precludes a federal lawsuit, but also allows the Union to block arbitration of these claims." *Pyett*, 556 U.S. at 273; *see also Hammel*, 2021 WL 9037958, at *3 n.1 ("[F]or the arbitration of claims based on federal rights to be compulsory, the CBA must permit employees to arbitrate such grievances even if the union declines to . . . do so."). However, both *Harris* and *Kravar* arose out of pre-2010 versions of the 32BJ/RAB CBA, which (arguably) did *not* give individual employees the ability to arbitrate their own discrimination claims if the Union declined to do so on their behalf.[12]

The CBA governing plaintiff Pepaj's employment at IFS is quite different. As noted above, it expressly permits an employee to arbitrate her own employment discrimination claims if the Union declines to do so. CBA Art. XVI § 30(B)(3)(a). It also provides for the assignment of a neutral arbitrator from the AAA's employment panel, and permits the use of the OCA offices for the arbitration, without charge. *Id*. § 30(B)(3)(b)-(c). Presented with the same contract language applicable here, courts in this District (and elsewhere) routinely compel employees to arbitrate even if the Union declined to do so. *See*, *e.g.*, *Garnes*, 2023 WL 5744466, at *2 (compelling arbitration, notwithstanding the Union's failure to pursue it, because under the No Discrimination Protocol plaintiff was "free to initiate an arbitration without the union's support"); *Ukshini v.*

---

[12] *See Morris*, 2010 WL 3291810, at *5 (finding that plaintiff, who was discharged in 2006, "had to rely on the Union to arbitrate her grievances"); *Kravar*, 2009 WL 1392595, at *2 (noting that plaintiff, who filed suit in 2006, was covered by a CBA under which "grievances that have not been resolved through the grievance procedure . . . may only be taken to arbitration at the request of either Local 32BJ or the affected employer") (cleaned up). The court in *Canales v. ACP Facility Servs., Inc.*, 2019 WL 1171479, at *5 (E.D.N.Y. Mar. 13, 2019), also appeared to be under the impression that the relevant version of the CBA "prevented the employee from arbitrating discrimination claims without union representation." However, as Judge Ramos explained in *Hamzaraj*, the Union and the RAB entered into a new Agreement and Protocol in 2010 (subsequently incorporated into the CBA itself), expressly providing that "if the Union declines to arbitrate a particular employment discrimination claim," the "individual employee" can "arbitrate the claim on his own." 2016 WL 3571387, at *3.

*Comity Realty Corp.*, 2016 WL 1733468, at *3 (S.D.N.Y. Apr. 29, 2016) (compelling arbitration where the Union "expressly declined to submit [plaintiff's] claims to arbitration," after which plaintiff failed to "submit his discrimination claims to mediation and arbitration on his own" as required by the CBA); *Jenkins*, 2013 WL 8112381, at *2-3 (rejecting plaintiff's claim that he was entitled to litigate after "the union declined to assist him," because the CBA, as recently supplemented, "allows individuals to proceed without union participation"); *Bouras*, 2012 WL 3055864, at *4 (S.D.N.Y. July 24, 2012) ("[R]egardless of the Union's participation, Bouras must arbitrate his Title VII claim. Because he did not, Defendant's motion for summary judgment dismissing Bouras's Complaint is granted."); *see also Gildea v. BLDG Management*, 2011 WL 4343464, at *5 (S.D.N.Y. Aug. 16, 2011) (compelling arbitration because the CBA "does not prevent Plaintiff from seeking to arbitrate his claim without Union participation").

This case is no different. Plaintiff Pepaj, like every other member of 32BJ covered by the CBA, was required to arbitrate her employment discrimination claims, and the No Discrimination Protocol expressly permitted her to do so "with or without the Union's participation." *Gildea*, 2011 WL 4343464, at *6. Consequently, the CBA's mandatory arbitration provisions are "enforceable as a matter of law," *Pyett*, 556 U.S. at 274, and plaintiff cannot proceed on her Title VII, NYSHRL, and NYCHRL claims in this Court.

### C.    Motion to Dismiss

As a practical matter, I recognize that plaintiff may be unable to obtain a merits resolution of her employment discrimination claims against IFS through arbitration. Among other things, it is unclear whether she ever submitted a Notice of Claim to initiate the process, as required by CBA Art. XVI, § 30(B)(2)(a), and doubtful whether she could do so now, since a Notice of Claim must be "filed within the applicable statutory statute of limitations." *Id*. Consequently, I now consider

whether – in the event plaintiff successfully objects to my arbitration ruling pursuant to Fed. R. Civ. P. 72(a) – this action should be dismissed outright as time-barred. I conclude that it should.

### 1.    Legal Standards

Faced with a motion to dismiss pursuant to Rule 12(b)(6), the court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). In addition to the facts alleged in the body of the complaint, the court may consider judicially-noticeable matters, *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 231 (2d Cir. 2016); documents "attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)); and "documents that, although not incorporated by reference, are 'integral' to the complaint." *Sierra Club v. Con-Strux*, 911 F.3d 85, 88 (2d Cir. 2018) (quoting *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011)). Plaintiff's November 18 and November 23, 2021 EEOC charges are attached to her Complaint and therefore may be considered pursuant to Rule 12(b)(6).

Title VII requires that a plaintiff file a charge of discrimination with the EEOC (or the New York State Division of Human Rights) within 300 days of the discriminatory or retaliatory act. 42 U.S.C. § 2000e-5(e)(1); *see also Cetina v. Longworth*, 583 F. App'x 1, 2 (2d Cir. 2014). This deadline functions "as a statute of limitations, and failure to file a timely administrative charge acts as a bar to a federal action." *Johnson v. Wendy's Corp.*, 2021 WL 243055, at *4 (S.D.N.Y. Jan. 25, 2021) (quoting *Lomako v. N.Y. Inst. of Tech.*, 2010 WL 1915041, at *4 (S.D.N.Y. May 12, 2010)). Additionally, a Title VII plaintiff must initiate her lawsuit within 90 days of receiving a Notice of Right to Sue from the EEOC. 42 U.S.C. § 2000e-5(f)(1). "Exhaustion of administrative remedies through the EEOC is 'an essential element' of the Title VII . . . statutory scheme[] and, as such, a

precondition to bringing such claims in federal court." *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001).

"Although the lapse of a limitations period is an affirmative defense," *Lizarraga v. Cent. Parking, Inc. - Waldorf Astoria Hotel*, 2014 WL 2453303, at *2 (S.D.N.Y. June 2, 2014) (quoting *Adams-Shango v. N.Y.C. Dep't of Educ.*, 2012 WL 383468, *3 (S.D.N.Y. Aug. 22, 2012)), it may be raised on a motion to dismiss pursuant to Rule 12(b)(6) if – as in this case – "the defense appears on the face of the complaint" and shows that the claim is "clearly . . . out of time." *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 319 (2d Cir. 2021) (internal quotation marks and citations omitted); *see also Harris*, 338 F. Supp. 3d at 188 (limitations defense must appear "on the face of the complaint," including "documents integral to the complaint," or arise from matters of which judicial notice may be taken) (internal quotation marks and citations omitted); *Lizarraga*, 2014 WL 2453303, at *2 (dismissing Title VII claims as untimely pursuant to Rule 12(b)(6)); *Adams-Shango*, 2012 WL 3834668, at *1, *3 (same).

Because plaintiff is proceeding pro se, her complaint must be construed "liberally, reading it with special solicitude and interpreting it to raise the strongest claims that it suggests." *J.S. v. T'Kach*, 714 F.3d 99, 103 (2d Cir. 2013). Additionally, a district court may, in its discretion, consider factual allegations made in a pro se plaintiff's opposition papers as "supplementing the Complaint, at least to the extent they are consistent with the allegations in the Complaint." *George v. Pathways to Hous., Inc.*, 2012 WL 2512964, at *6 n.7 (S.D.N.Y. June 29, 2012); *accord Dawkins v. Biondi Educ. Ctr.*, 164 F. Supp. 3d 518, 521 n.1 (S.D.N.Y. 2016) (collecting cases). I have done so here, and have carefully considered the factual allegations made in plaintiff's opposition papers concerning her failure to comply with the 300-day period within which a Title VII plaintiff must file an EEOC charge. However, pro se status "does not exempt a party from

compliance with relevant rules of procedural and substantive law." *Maisonet v. Metro. Hosp. & Health Hosp. Corp.*, 640 F. Supp. 2d 345, 348 (S.D.N.Y. 2009) (internal quotation marks and citation omitted), and therefore, even a pro se plaintiff "must state a plausible claim for relief." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013).

### 2.    Plaintiff's Title VII Claim Is Time-Barred

Plaintiff acknowledges that she did not file a Charge of Discrimination with the EEOC until (at the earliest) November 18, 2021, which was 805 days after IFS terminated her employment. Compl. at ECF p. 23. Nonetheless, she argues, her Title VII claim (which is her only federal claim, and therefore the only basis upon which she could invoke this Court's subject matter jurisdiction) should not be dismissed as time-barred because she acted with "reasonable diligence" in the face of "extraordinary circumstances," warranting the application of equitable tolling. Pl. Resp. at 2-3. Specifically, plaintiff points to her poor English skills, the COVID-19 pandemic, and her "protracted back and forth with her Union" and with the NLRB. *Id.*

"A litigant seeking equitable tolling bears the burden of establishing two elements: (1) that [s]he has been pursuing h[er] rights diligently, and (2) that some extraordinary circumstance stood in h[er] way." *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 144 (2d Cir. 2011) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *see also Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) ("equitable tolling is only appropriate in rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising h[er] rights") (cleaned up). For example, in *Walker v. Linklaters LLP*, 948 F. Supp. 2d 396 (S.D.N.Y. 2013), the court applied equitable tolling to excuse the plaintiff's nine-day delay in filing his EEOC charge where he was in touch with the EEOC well before the deadline, was working on the forms, and plausibly alleged "that he was misled by EEOC personnel as to the deadline for filing his claim." *Id.* at 400.

None of the factors cited by plaintiff comes close to justifying her 505-day delay in filing her initial EEOC charge. "That Plaintiff was a *pro se* litigant with limited English skills, does not, alone, warrant the application of equitable tolling principles." *Blaizin v. Caldor Store # 38*, 1999 WL 97899, at *2 (S.D.N.Y. Feb. 23, 1999); *see also Cruz v. Triangle Affiliates, Inc.*, 571 F. Supp. 1218, 1222 (E.D.N.Y. 1983) (plaintiff's "status of layman with English as a second language" was not ground for equitable tolling, particularly where defendant "did nothing to lull or mislead him or otherwise forestall or impede him from timely filing with the EEOC"). Here, plaintiff makes no claim that she was lulled or misled – by anyone – about her 300-day deadline to file an EEOC charge. During the May 23, 2024 court hearing, she specifically denied that anyone "told [her] that [she] could wait." 5/23/24 Tr. at 31:15-18. If and to the extent plaintiff was simply unaware of that deadline, that fact, likewise, would not warrant equitable tolling, even for a short period. *See Harris v. Transport Workers Union L-100*, 2007 WL 972338, at *4 (E.D.N.Y. Oct. 17, 2007) ("a plaintiff's failure to realize that he must file a charge with the EEOC within a given period will not toll the limitations period unless plaintiff can show that his employer 'actively mislead' a plaintiff into believing otherwise"); *Ahmed v. Brown*, 2006 WL 2355838, at *1 (E.D.N.Y. Aug. 15, 2006) (noting that courts have "routinely declined" to toll the statute of limitations on the basis that a pro se plaintiff was ignorant of the relevant limitations period, and collecting cases).

Similarly, it is by now well-settled that the COVID-19 pandemic, which affected all New Yorkers in 2020, "is not, standing alone, 'sufficient to warrant equitable tolling' absent a more specific personal showing (for example, that a specific government-imposed restriction prevented him from meeting his filing deadline)." *Gomez v. Henry St. Settlement*, 2021 WL 4943509, at *6 (S.D.N.Y. July 27, 2021) (quoting *Hood v. Catholic Health Sys., Inc.*, 2020 WL 8371205 at *3-5 (W.D.N.Y. Sept. 28, 2020)), *adopted,* 2021 WL 4239177 (S.D.N.Y. Sept. 17, 2021); *accord*

*Garnes*, 2023 WL 3980693, at \*10; *Verne v. N.Y.C. Dep't of Educ.*, 2022 WL 4626533, at \*6 (S.D.N.Y. Sept. 30, 2022). Plaintiff makes no "personal showing" as to the effect of the pandemic on her ability to file an EEOC charge by July 1, 2020. Moreover, as defendants point out, plaintiff "was able to file her NLRB complaint during the COVID-19 pandemic without any issue," Def. Reply at 4, suggesting that the pandemic is not what "stood in [her] way" with respect to the EEOC. *Castillo*, 656 F.3d at 144.

Finally, the fact that plaintiff was engaged in an "extended back-and-forth" with 32BJ and the NLRB, Pl. Resp. at 2-3, does not support her request for equitable tolling, because "the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods." *Del. State Coll. v. Ricks,* 449 U.S. 250, 261 (1980); *see also*, *e.g.*, *Cherry v. City of New York*, 381 F. App'x 57, 59 (2d Cir. 2010) (summary order) (although plaintiff was "diligent in seeking resolution of his dispute through DOC and his union," he was not entitled to equitable tolling of his EEOC filing deadline because he did not assert, much less establish, any "extraordinary circumstances").

Because plaintiff missed her initial EEOC filing deadline – by a mile – and has not alleged any facts that would warrant equitable tolling, her Title VII claim should be dismissed pursuant to Rule 12(b)(6). There is no need for the Court to also consider whether she failed to file this action within 90 days of her presumed receipt of the 12/1/21 EEOC Notice. Moreover, in the absence of a viable federal claim, there is no reason for this Court to retain supplemental jurisdiction over plaintiff's remaining state and local claims. *See* 28 U.S.C. § 1367(c) ("[A] district court[ ] may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]"); *Marcus v. AT&T Corp*., 138 F.3d 46, 57 (2d

Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.").

## IV.    CONCLUSION

For the reasons set forth above, defendants' motion (Dkt. 52) is GRANTED to the extent it seeks an order compelling arbitration pursuant to the FAA, and this action is STAYED pending the outcome of plaintiff's CBA arbitration. The parties are directed to provide a joint status letter to the Court no later than **June 17, 2025**, as to the progress of the arbitration proceedings.

In the event that plaintiff successfully objects to my arbitration ruling, I recommend, respectfully, that her Title VII claim be DISMISSED WITH PREJUDICE pursuant to Rule 12(b)(6), as time-barred, and that her NYSHR and NYCHRL claims be DISMISSED WITHOUT PREJUDICE pursuant to Rule 12(b)(1).

Dated: New York, New York
        December 17, 2024

_____
**BARBARA MOSES**
**United States Magistrate Judge**

## NOTICE OF PROCEDURE FOR FILING OF OBJECTIONS

The parties shall have 14 days from this date to file written objections to this Order and Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72. *See also* Fed. R. Civ. P. 6(a) and (d). Any such objections shall be filed with the Clerk of the Court and delivered to the Hon. John P. Cronan in accordance with Judge Cronan's individual rules of practice. Any request for an extension of time to file objections must be directed to Judge Cronan. **Failure to file timely objections will result in a waiver of such objections and will preclude appellate review**. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x, 486, 487 (2d Cir. 2018); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).